UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BREEHAN WILKINS,

Plaintiff,

v.

Case No. 2:25-cv-333-KCD-NPM

NOELLE BRANNING, AS THE
LEE COUNTY TAX COLLECTOR,

Defendant.
_______________________________/

**ORDER**

Plaintiff Breehan Wilkins sues her former employer, the Lee County Tax Collector ("LCTC"), for discrimination. Wilkins alleges that LCTC used a false accusation of theft as a pretext to fire her, masking an underlying intent to remove her disabled son from LCTC's healthcare plan. LCTC moves for summary judgment, asserting that there is no genuine dispute that requires a trial. (Doc. 25). For the reasons below, the motion is **GRANTED**.

## I. Background

To the extent material facts remain in dispute, the Court addresses them in the analysis below, viewing the record "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).[1]

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Wilkins worked at LCTC for six years. When her employment ended, she held the position of senior clerk. She performed her job well and got along with her supervisor and co-workers.

Wilkins's son suffers from severe autism. Throughout her employment, she occasionally took leave under the Family and Medical Leave Act to care for her son. LCTC never denied Wilkins's FMLA requests. In fact, LCTC approved her intermittent leave for an entire year (from March 7, 2023, to March 7, 2024) to ensure she could take her son to his appointments. Around the same time, LCTC human resources started requiring Wilkins to provide a doctor's note for her son's appointments. While Wilkins complied, she believes that this policy was not applied to others. LCTC says her belief is wrong and that other employees were required to submit medical documentation to support their FMLA leave requests.

Wilkins was terminated on November 27, 2023, after a $900 cash shortage in her drawer was reported. The decision to terminate her was made by Orfelia Mayor, Christine Christensen, and Tracy Pipkins. The parties dispute much of what occurred surrounding the shortage. As Wilkins tells it, she didn't take the money and doesn't know how it happened. LCTC claims Wilkins stole the money, relying on video footage of her desk as corroborating evidence. The Court does not have the video but relies on the parties' differing recitations of the event. (Doc. 25 ¶ 85; Doc. 27 at 9-10.)

LCTC officially fired Wilkins for failure to properly perform her job duties, violating LCTC's cash-handling policy, and causing a financial loss. LCTC states that the decision to terminate her had nothing to do with her son's medical needs, nor her FMLA leave. Mayor, Christensen, and Pipkins submitted affidavits to this effect. (*See* Doc. 25-1, Christensen Aff. ¶¶ 7, 8, 13, 14, 16; Doc. 25-3, Mayor Aff. ¶¶ 11, 12; Doc. 25-4, Pipkins Aff. ¶¶ 11, 12.)

Wilkins has her own theory. She brings a claim for associational disability discrimination, alleging she was terminated because LCTC wanted to keep her son off its new healthcare plan. LCTC was switching health insurance providers from Aetna to United Healthcare, administered by the Florida Sheriffs' Employee Benefits Trust. Wilkins wanted to ensure that her son could keep seeing the same doctors, so she called Becky Miller at the Florida Sheriffs. Wilkins alleges that Miller told her that she was aware of her son's conditions. This surprised Wilkins because she had not yet given Miller any of that information, so she asked who told Miller about her son. Miller said it could have been Aetna or LCTC's HR department. Miller denies this and says that before talking to Wilkins, she had no information about her son, his diagnosis, providers, or any medical claims, and the only person to provide Miller with any information was Wilkins. (Doc. 25-2.) In any event, Miller assisted Wilkins with her requests and worked to bring the son's

providers into the United Healthcare network. Wilkins was terminated before the change in insurance took place.

## II. Legal Standard

Summary judgment is not a substitute for trial. It is appropriate only "when a movant shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *Gonzalez v. Indep. Ord. of Foresters*, No. 24-10758, 2025 WL 337898, at *2 (11th Cir. Jan. 30, 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). If the record is so one-sided that a party must prevail as a matter of law, summary judgment is appropriate.

The mechanics are straightforward. The moving party bears the initial burden. They must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must then step up, go beyond the pleadings, and point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "An issue is genuine if a reasonable jury could return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-

CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019).

## III. Discussion

"The FMLA grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons, including [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). To protect this right, the statute allows employees to bring a private cause of action for interference or retaliation. *Id.* Wilkins has pled both claims here, so the Court considers each in turn.

### A. FMLA Interference (Count I)

An employee establishes FMLA interference when she "demonstrate[s] by a preponderance of the evidence that she was entitled to an FMLA benefit that was denied." *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018); *see also Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1266-67 (11th Cir. 2008). In her response brief, Wilson alleges that LCTC interfered with her FMLA rights by requiring that she submit a medical note for her son's appointments. (Doc. 27 at 13.) The problem for Wilkins, though, is that this allegation is nowhere in the complaint. (Doc. 1.) In fact, the complaint doesn't mention the documentation issue at all. "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). So Wilkins's failure to plead this theory puts it off the table.

Wilkins's only contention in the complaint is that her termination effectively deprived her of FMLA-protected leave already approved for one year (March 7, 2023 to March 7, 2024). (Doc. 1 at 5-7; Doc. 27 at 14.) LCTC responds that this claim is not viable because Wilkins was given all the FMLA leave she requested, and that her right to that FMLA leave walked out the door with Wilkins. (Doc. 25 at 18.) LCTC is correct.

An employer does not violate the FMLA by firing an employee who is eligible for leave. After all, "the right to commence FMLA leave is not absolute." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010). Instead, "if a dismissal would have occurred regardless of the request for FMLA leave, an employee may be dismissed," even if it "prevent[s her] from exercising [her] right to leave or reinstatement." *Id.* Accordingly, the mere fact that Wilkins was eligible for FMLA leave is not determinative. *See Montgomery v. Ion Media Mgmt. Co.*, No. 8:10-CV-429-T-33AEP, 2011 WL 1791294, at *11 (M.D. Fla. May 10, 2011) (explaining that an employee is not "insulated from termination" just become he has raised "the possibility of her need for FMLA leave" or even by "formally request[ing] such leave"); *see also Gamba v. City of Sunrise*, 157 F. App'x 112, 113 (11th Cir. 2005).

LCTC did not deny Wilkins any benefit under the FMLA. At the time of her termination, Wilkins's requested leave was approved in full for the entire year. Wilkins testified that she accessed her full FMLA benefits and leave throughout her employment with LCTC. (Doc. 24-1 at 49:20-24.) She also agreed that she was approved for all FMLA leave requested. (*Id.* at 69:22-25.) LCTC never refused Wilkins FMLA leave. (*Id.* at 70:2-7.) And she always returned to work after FMLA appointments. (*Id.* at 70:21-23.) In fact, at the time Wilkins was terminated, she had recently taken FMLA leave and had been restored to her position upon her return. (*Id.* at 73:10-13; Doc. 25-1 ¶ 15;) *see Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir. 1999) ("[A] plaintiff suffers no FMLA injury when she receives all the leave she requests[.]").

At bottom, "[t]here is nothing in the FMLA that prevents an employer from terminating an employee who still has leave." *Yoosun Han v. Emory Univ.*, 658 F. App'x 543, 546 (11th Cir. 2016). LCTC provided Wilkins with all the FMLA leave she requested and reinstated her every time she returned. And, as discussed below, nothing links her FMLA leave to her termination. On such facts, the interference claim cannot stand.

**B. FMLA Retaliation (Count II)**

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right"

provided under the FMLA. 29 U.S.C. § 2615(a)(1). A claim for FMLA retaliation is generally evaluated under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To show a prima facie claim of retaliation under the FLMA, "an employee must allege that (1) [she] engaged in a statutorily protected activity; (2) [she] suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004). Unlike an interference claim, a retaliation claim places an "increased burden" on a plaintiff to show "that [her] employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). A plaintiff's ultimate burden is to "demonstrate that [her] employer intentionally discriminated against [her]." *Id.*

Wilkins engaged in statutorily protected conduct when she requested leave. She also suffered an adverse employment action when LCTC terminated her. The dispute here boils down to whether Wilkins "came forth with sufficient evidence to create a genuine issue of fact that [her] application for FMLA leave caused [her termination]." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).

To establish causation, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). Usually, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact." *Brungart*, 231 F.3d at 799.

Wilkins again relies on the medical documentation requirement. (Doc. 27 at 14.) But, as mentioned, that's a nonstarter. Wilkins then jumps right to pretext, arguing that the real reason for her termination was FMLA retaliation, not the cash shortage. But this argument is summarily made and devoid of evidence. Wilkins must show some connection between the requested leave and her termination. She simply hasn't done so. Wilkins wasn't denied any FMLA leave and had taken leave the month before she was terminated. The LCTC employees who terminated her stated that neither her FMLA leave, nor her son's condition was a factor in her termination. (Docs. 25-1, 25-3, 25-4.) There is no evidence that LCTC had discussed terminating or disciplining Wilkins when she inquired about medical leave or requested FMLA leave. Since Wilkins has also not established a genuine issue about whether her FMLA leave was a factor in LCTC's decision to terminate her, summary judgment is appropriate.

**C. Disability Discrimination (Counts III, IV)**

In Counts III and V, Wilkins alleges that LCTC discriminated against her based on an associational disability, violating both the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA"). (Doc. 1 at 10-15.) Wilkins concedes that the FCRA does not recognize such a claim, so she abandons it. (Doc. 27 at 18); *see Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329 (11th Cir. 2021).

That leaves the ADA. To prevail on this claim, Wilkins must show: "(1) that she was subjected to an adverse employment action; (2) that she was qualified for the job at that time; (3) that her employer knew at that time that she had a relative [or associate] with a disability; and (4) that the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative [or associate] was a determining factor in the employer's decision." *EEOC v. STME, LLC*, 938 F.3d 1305, 1319 (11th Cir. 2019). If a plaintiff establishes a prima facie case of discrimination and the defendant articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden then shifts to the plaintiff to show that the defendant's legitimate, nondiscriminatory reason is a pretext for unlawful disability discrimination. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242-43 (11th Cir. 2001).

Wilkins has failed to establish a prima facie case because she does not demonstrate that her son's medical condition, or the health care costs of his condition, was a factor in LCTC's decision to terminate her. There was no testimony suggesting that either Mayor, Christensen, or Pipkins had any discriminatory animus against either Wilkins or her son. Nor was there any evidence that they even knew the costs of Wilkins's son's medical treatment or whether such costs were increasing LCTC's insurance premiums. Without such evidence, Winkins' discrimination claim fails. *See Cusick v. Yellowbook, Inc.*, 607 F. App'x 953 (11th Cir. 2015); *Hopkins v. Sam's W., Inc.*, 216 F. Supp. 3d 1322 (N.D. Ala. 2016).

Wilkins tries to raise a reasonable inference of discrimination by pointing to Becky Miller, who told Wilkins that she was aware of her son's medical condition. Wilkins infers that she could have learned of that only through LCTC employees who were making an effort to exclude her son from the insurance plan. But Wilkins simply has no evidence to support her nefarious connection theory between Miller and LCTC. In fact, Miller assisted Wilkins with her requests and worked to bring the son's providers into the United Healthcare network. And LCTC has provided evidence that Wilkins's firing had nothing to do with her son's disabilities. (*See* Doc. 25-2, Miller Aff. ¶¶ 5-14; Doc. 25-1, Christensen Aff. ¶¶ 7, 8, 13, 14, 16; Doc. 25-3, Mayor Aff. ¶¶ 11, 12; Doc. 25-4, Pipkins Aff. ¶¶ 11, 12.)

At bottom, courts do not "sit as a super-personnel department that reexamines an entity's business decisions." *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991). LCTC is entitled to summary judgment on the ADA claim.

**D. Retaliation (Counts V, VI)**

Finally, in Counts V and VI, Wilkins advances claims for retaliation under the ADA and FCRA. These claims are considered under the same Title VII burden-shifting framework as above. *Ring v. Boca Ciega Yacht Club, Inc.*, 4 F.4th 1149, 1162-63 (11th Cir. 2021); *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 n.4 (11th Cir. 2010); *Clark-Hilery v. Marketopia LLC*, No. 8:23-CV-00284-TPB-AEP, 2025 WL 822743, at *3 (M.D. Fla. Mar. 14, 2025). The ADA and the FCRA prohibit retaliation against employees who oppose unlawful employment practices. 42 U.S.C. § 2000e-3(a); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020). For these claims, a plaintiff must show (1) that she engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) that a causal relation exists between the two events. *Id.* at 1134-35; *Vincent v. Jefferson Cnty. Bd. of Educ.*, 152 F.4th 1339, 1352 (11th Cir. 2025).

Wilkins has not shown that she engaged in statutorily protected expression. She alleges that LCTC retaliated against her after she "sought clarification about LCTC's new FMLA documentation requirement,

communicated with Miller about continuity of care and providers under the new plan, and raised questions because her son depended on ongoing therapy and medical care." (Doc. 27 at 19.) But there is no evidence that she made any internal complaints about these issues. Wilkins fails to explain, factually or legally, how her conduct amounts to protected activity. As best the Court can tell, she simply *believes* that her questions to Miller and LCTC about the new health plan were connected to how LCTC treated her. (Doc. 27-1 ¶ 17.) That is not enough.

Likewise, Wilkins' EEOC charge was filed *after* her termination. (Doc. 25-5.) Therefore, none of those alleged protected activities can support her retaliation claims. To state the obvious, LCTC cannot retaliate against an employee for complaints that did not exist or that it never learned of. *See Alford v. Martin & Gass, Inc.*, 391 F. App'x 296, 304 (4th Cir. 2010) (finding no basis for imputing liability for retaliatory harassment to plaintiff's employer where plaintiff "conceded that he never reported the harassment" and had "not otherwise shown that [his employer] was aware of it"). Summary judgment on the retaliation claims is thus warranted.

## IV. Conclusion

In sum, Wilkins has not shown that there is a genuine issue for trial. LCTC's motion for summary judgment (Doc. 25) is therefore **GRANTED**. The

Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on September 17, 2026.

Kyle C. Dudek
United States District Judge